UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARYL WHEELER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-CV-0421-CVE-TLW |
| ) | |
| SPIRIT AEROSYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Partial Motion to Dismiss Plaintiff's Claim for Gender and Age Discrimination with Regard to Training and Plaintiff's Claim for Intentional Infliction of Emotional Distress and Brief in Support Thereof (Dkt. # 11). Defendant Spirit Aerosystems, Inc. (Spirit) seeks to partially dismiss plaintiff's age and gender discrimination claims to the extent that she seeks relief under theories of failure to train, failure to accommodate, and the denial of benefits (first and second claims for relief), because plaintiff failed to exhaust her administrative remedies for such claims. Spirit also argues that plaintiff has failed to state a claim of intentional infliction of emotional distress (third claim for relief).

**I.**

Daryl Wheeler is a female over the age of 40, and she has been employed by Spirit since 1984. In 2009, Wheeler was assigned to the sanding department and she was required to sand airplane wings and 737 slabs for her entire shift. Dkt. # 2-2, at 3. Wheeler developed carpel tunnel syndrome and had surgery for this condition, and she claims that the carpel tunnel syndrome was caused by her work. Id. When plaintiff returned to work after her surgery, she was again assigned to the sanding department and she filed a grievance against her supervisor. Id. at 4. Plaintiff was

transferred to the night shift, and she was assigned to a different department under a new supervisor. Id. Wheeler claims that her new supervisor, Jack Goodnight, approached the human resources department after learning of Wheeler's grievance, and he allegedly asked that Wheeler not be assigned to the day shift. Id. Wheeler alleges that two younger male employees were allowed to transfer to the day shift. Id.

Wheeler claims that Goodnight treated her more harshly than her male co-workers. Wheeler had hip replacement surgery in 2010 and took time off work to recover from her surgery, and she claims that Goodnight assigned her the most physically challenging jobs in the department upon her return to work. Id. She alleges that a younger male co-worker had surgery and that he was given less physically demanding assignments when he returned to work. Id. Wheeler subsequently requested and received a transfer to the day shift, and her new supervisor was Billy Dees. Id. Wheeler alleges that Goodnight spoke to Dees before Wheeler was transferred, and he allegedly told Dees not to allow Wheeler to perform less physically demanding work, such as operating the crane. Id. Wheeler also alleges that Dees refused to answer her questions. Id. Wheeler claims that her co-workers ridiculed her because she walked with a limp, and Goodnight called Wheeler a "bitch" when speaking to other employees. Id. at 5. Wheeler claims that, in December 2012, she came to work and found her locker wired shut, and a few days later someone glued the lock on her locker shut so that she was forced to cut the lock open. Id. In January 2013, Wheeler returned to work after a holiday break and found that someone had punched a hole in her locker. Id. Based on the allegations of the petition, it appears that Wheeler is still employed by Spirit.

Wheeler filed a charge of discrimination with the Equal Employment Opportunity Commission, and the EEOC attached to the charge a written statement prepared by Wheeler. Dkt. # 11-1. In the statement, Wheeler claimed that she was being treated differently than male employees because of her gender, and she also believed that Spirit was discriminating against her on the basis of her age. She alleged that her supervisors treated her poorly and that she received less favorable work assignments than her male co-workers. Id. One of her supervisors allegedly told another employee that Wheeler was a "bitch." Id. She claims that she was transferred to the sanding department where she was required to sand airplane wings, and this caused her to reinjure one of her arms. Id. Wheeler requested a transfer to another department, but she claims that her former supervisors asked the human resources department to deny Wheeler's request. Id. Wheeler was subsequently transferred to another department, but she claims that she was previously injured while working in that department and she believes that she is "being set up to fail." Id. Wheeler claims that male co-workers have harassed her by repeatedly damaging her locker and making fun of her. Id. In the EEOC charge, Wheeler did not allege that she requested any type of accommodation and she did not assert a claim based on disability discrimination.

The EEOC issued a right to sue letter to Wheeler and she filed this case in Tulsa County District Court alleging claims of gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and a claim of intentional infliction of emotional distress under Oklahoma law. Dkt. # 2-2, at 2-8. Wheeler's Title VII and ADEA claims are based on alleged "disparate treatment compared to similarly situated . . . coworkers with regard to job

3

assignments, training, benefits, and accommodation . . . ." Id. at 5, 6. Spirit removed the case to federal court on the basis of federal question jurisdiction.

## II.

The exhaustion of administrative remedies is a jurisdictional prerequisite under Title VII, and Spirit's motion to dismiss should be treated as a Fed. R. Civ. P. 12(b)(1) motion to the extent that the Spirit asserts that plaintiff failed to allege certain claims in her EEOC charge. See Shikles v. Sprint/United Management Co., 426 F.3d 1304, 1317 (10th Cir. 2005); Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997). When considering a motion to dismiss under Rule 12(b)(1), the Court must determine whether the defendant is facially attacking the complaint or challenging the jurisdictional facts alleged by the plaintiff. In Holt v. United States, 46 F.3d 1000 (10th Cir. 1995), the Tenth Circuit stated:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1002-03. Spirit relies on evidence outside the pleadings, specifically plaintiff's EEOC charge, and the Court will construe the motion as a factual attack on the jurisdictional facts alleged by plaintiff. When ruling on a factual attack on subject matter jurisdiction, a court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" without converting the motion into a motion for summary judgment. Stuart v.

Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting Holt, 46 F.3d at 1003); see also Davis ex rel. Davis v. United States, 343 F.3d 1282, 1295-96 (10th Cir. 2003) (district court had authority to review evidence outside the pleadings on issue of exhaustion of administrative remedies without converting defendant's motion to dismiss into a motion for summary judgment).

Spirit seeks dismissal of plaintiff's claim for intentional infliction of emotional distress based on failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).

5

"[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

### A.

Defendant argues that plaintiff failed to exhaust her administrative remedies as to employment discrimination claims based on defendant's alleged failure to provide training, benefits, or an accommodation. Dkt. # 11, at 2-4. Plaintiff concedes that she did not exhaust any claim for failure to train or denial of benefits, but she claims that her EEOC charge gave defendant adequate notice that she intended to allege a claim "regarding job assignment" and this is reasonably related to her allegation she was denied an accommodation. Dkt. # 15, at 1.

It is clearly established that a plaintiff alleging claims under Title VII or the ADEA must exhaust her administrative remedies before filing suit. Shikles, 426 F.3d at 1317. "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." Jones v. UPS, Inc., 502 F.3d 1176, 1186 (10th Cir. 2007) (quoting MacKenzie v. City and County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005)). A plaintiff must exhaust her administrative remedies as to each discrete act of discrimination before filing suit. Apsley v. Boeing, Co., 691 F.3d 1184, 1210 (10th Cir. 2012). Courts should liberally construe the allegations of an EEOC charge when determining if a plaintiff has exhausted her administrative remedies for claims arising under Title VII and the ADEA. Jones, 502 F.3d at 1186; MacKenzie, 414 F.3d at 1274; Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1195 (10th Cir. 2004).

Plaintiff argues that her EEOC charge gives defendant adequate notice that she intended to assert employment discrimination claims "regarding accommodations," because these allegations are "reasonably related" to the claims alleged in the EEOC charge. Dkt. # 15, at 4. However, "accommodation" is a term of art used in the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA), and it is not clear that failure to accommodate is even a viable theory under Title VII or the ADEA.[1] See 42 U.S.C. § 12111(9) (defining "reasonable accommodation" under the ADA). Even if failure to accommodate is a viable theory under Title VII or the ADEA, plaintiff's EEOC charge does not contain any allegations suggesting that she requested and was denied an accommodation. Plaintiff's federal employment discrimination claims concern harassment in the form of discriminatory transfers or denials of transfers, and defendant has not argued that the plaintiff failed to exhaust claims related to job transfers. Discrimination against an employee in terms of a transfer or the denial of a transfer would constitute discrete acts of discrimination distinct from an alleged failure to accommodate, and plaintiff must fully exhaust her administrative remedies for each type of claim. Plaintiff is not precluded from proceeding under Title VII or the ADEA for claims arising out of transfers or the denial of transfers, but she failed to exhaust her administrative remedies for any alleged failure to provide reasonable accommodations. Thus, the Court lacks subject matter jurisdiction over plaintiff's Title VII and the ADEA claims to the extent those claims are based on the denial of training, benefits, or an accommodation.

---

[1] Title VII does permit an employee to request a religious accommodation in some circumstances, but that type of accommodation is not at issue in this case. See Shrum v. City of Coweta, Oklahoma, 449 F.3d 1132 (10th Cir. 2006).

**B.**

Defendant argues that plaintiff's intentional infliction of emotional distress claim should be dismissed under Rule 12(b)(6), because the petition fails to allege facts supporting an inference that defendant's conduct was extreme or outrageous or that she suffered severe emotional distress. Dkt. # 11, at 4. Plaintiff responds that was she was repeatedly harassed and subjected to physical violence, that defendant's supervisors ratified this conduct, and that she has adequately alleged that defendant engaged in extreme and outrageous conduct.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376. To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct

"may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law). If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether the defendant's conduct could result in liability. Id. The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress. Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff. See Computer Publications, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); Zahorsky v. Community Nat'l Bank of Alva, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Plaintiff alleges that she was harassed because of her age, gender, and disability and that she was treated less favorably in terms of work assignments that younger male co-workers. Dkt. # 15, at 5. In her response to defendant's motion, plaintiff alleges that she was the victim of "physical violence," because her locker was glued and wired shut and the locker was "mutilated" by male co-workers. Id. She also claims that her supervisors ratified this conduct by refusing to take disciplinary action against the employees who harassed her. Id. Plaintiff's allegations are not sufficient to state a claim for intentional infliction of emotional distress. The alleged "physical violence" was directed at a locker, not the plaintiff, and she makes no allegation that she personally suffered any physical harm. Plaintiff alleges that Goodnight told male co-workers that plaintiff was a "bitch," but she does not allege that she present when the remark was made or that Goodnight used such language more than one time. Dkt. # 2-2, at 5. Plaintiff's remaining allegations concerning the denial of transfers or the assignment of demanding physical labor following plaintiff's surgery, even if based on an improper motives, are the types of allegations that courts have routinely found insufficient to support an inference that defendant's conduct was extreme and outrageous in the workplace setting. See Doyle v. Nordam Group, Inc., 2010 WL 5141247 (N.D. Okla. Dec. 13, 2010) (denial of promotion, even if based on improper motives, did not rise to the level of extreme and outrageous conduct). The Court also notes that plaintiff has made only a general allegation of severe emotional distress, and this conclusory allegation of severe emotional distress does not comply with Twombly. Youngblood v. TCIM Servs., Inc., 2011 WL 3111958 (N.D. Okla. July 26, 2011). The Court finds that plaintiff's intentional infliction of emotional distress claim should be dismissed.

**IT IS THEREFORE ORDERED** that Defendant's Partial Motion to Dismiss Plaintiff's Claim for Gender and Age Discrimination with Regard to Training and Plaintiff's Claim for Intentional Infliction of Emotional Distress and Brief in Support Thereof (Dkt. # 11) is **granted**: plaintiff's age and gender discrimination claims (first and second claims for relief) are partially dismissed to the extent that she alleges discrimination based on the denial of training, benefits, and accommodation; plaintiff's claim of intentional infliction of emotional distress (third claim for relief) is dismissed.

**DATED** this 1st day of October, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE